**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Raymond J. Ewers, et al., | ) | CASE NO. 1:07 CV 2799 |
| | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Genuine Motor Cars, Inc., et al., | ) | Memorandum of Opinion and Order |
| | ) | |
| Defendants. | ) | |

### INTRODUCTION

This matter is before the Court upon Defendants Genuine Motor Cars, Inc. Joseph G.

Kase, and Bryan Rogers' [sic] Motion to Dismiss or Stay Case Pending Arbitration, and for an

Award of Attorneys' Fees and Costs (Doc. 6). This case arises out of the sale of a motor vehicle.

For the reasons that follow, the motion is GRANTED in PART.

### FACTS

Plaintiffs, Raymond J. Ewers and Mayra Coughlin-Ewers, filed this action against

defendants, Genuine Motor Cars, Inc. ("Genuine"), Joseph G. Kase, Bryan Rogers (collectively,

"defendants"), the American Arbitration Association ("AAA"), and Wachovia Bank alleging

1

wrongdoing in connection with the internet sale of a van by defendants to plaintiffs.

In March of 2007, Genuine advertised on Ebay to sell a Ford van located in Florida.  The advertisement indicated that the van had genuine leather seats.  Later that month, Raymond Ewers contacted Genuine via telephone and confirmed that the van in fact had genuine leather seats.  Based on these representations, Raymond Ewers negotiated to purchase the van. Plaintiffs agreed to exercise the "buy it now" option on Ebay for a total of nearly $32,000. Shortly thereafter, and prior to viewing the vehicle, plaintiffs wired the money to Genuine's bank account in Florida..  Plaintiffs informed defendants that they would be vacationing in Florida and, therefore, would forgo having the van shipped to Ohio.  Rather, plaintiffs indicated they would rent a van to travel to Florida and return to Ohio with the newly purchased van.   Plaintiffs did not see any of the purchase documents until they arrived in Florida.

Upon plaintiffs' arrival in Florida, all of the purchase documents were presented to Mayra Coughlin-Ewers, as the van was to be titled in her name.  The purchase documents contained an agreement to arbitrate.  At no point did defendants discuss any of the terms, including the arbitration agreement, with Mayra Coughlin-Ewers.  The arbitration agreement consists of a pre-printed form and was prepared without any input from plaintiffs. Mayra Coughlin-Ewers signed all of the documents, including the arbitration agreement.

On April 9, 2007, plaintiffs discovered that the upholstery in the van was not leather. Defendants offered to void the transaction and accept the van for a full refund.  When plaintiffs returned to the showroom, however, defendants demanded an offset of $3.00 per mile.  Plaintiffs agreed and left the showroom with the understanding that defendants would mail a check to plaintiffs' residence representing the purchase price less approximately $2100 in mileage

charges.  The following week, defendants contacted plaintiffs and indicated that the check would not be mailed until plaintiffs signed a release of liability.  Plaintiffs refused.

Thereafter, on May 16, 2007, Genuine submitted the dispute to the AAA in St. Petersburg, Florida.  On May 30, 2007, the AAA sent the parties a letter indicating that a hearing would soon be held and that any objection to the locale must be filed within fifteen days of the letter.  In response, plaintiffs filed an objection to the arbitration in general, as well as to the location in which the hearing was set to proceed.[1]  Thereafter, on August 7, 2007, the AAA sent a notice to the parties indicating that a hearing would be held on Monday, August 20, 2007.  On the preceding Friday, plaintiffs filed a motion for temporary restraining order in state court seeking to halt the arbitration proceeding.  The TRO was granted.  Thereafter, the state court granted plaintiffs' motion for a preliminary injunction preventing the commencement of the arbitration proceeding until such time as the court determine whether the arbitration agreement governs the claims at issue in this case.

Thereafter, defendants removed this matter to this Court.  The complaint contains 13 claims for relief.  Count one is a claim for breach of contract.  Counts two and three assert fraud and conversion, respectively.  Count four is a claim for unjust enrichment and count five asserts a violation of the Ohio Consumer Sales Practices Act.  Count six alleges "piercing the corporate veil."  Count seven is an action to rescind and count eight alleges joint and several liability. Count nine seeks punitive damages.  Count ten alleges that the arbitration agreement at issue is unenforceable.  Count eleven is an action to freeze defendants' accounts.  Count twelve alleges a

---

[1]     In their motion, defendants claim that plaintiffs never objected to the location of the arbitration.  Plaintiffs, however, attach a copy of a letter directed to the AAA objecting to the location.

3

violation of the Federal Odometer Act and count thirteen is an action to enjoin arbitration.

Defendants move to compel arbitration and dismiss or stay this action.  Plaintiffs oppose the motion.

**STANDARD OF REVIEW**

Section 2 of the Federal Arbitration Act provides that a written provision for arbitration "in any maritime transaction or a contract evidencing a transaction involving commerce...shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  Section 3 allows federal courts to stay proceedings when an issue in a case is referable to arbitration, and Section 4 provides for orders compelling arbitration if a party refuses to comply with an arbitration agreement. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).

In ruling on defendants' motion,

> Section 4 of the Arbitration Act requires the court to engage in a limited review.  The first step of that review is to determine if a valid agreement to arbitrate exists between the parties.  If a valid arbitration agreement exists, the court must determine if the specific dispute falls within the substantive scope of the agreement.

*Harmer v. Doctor's Associates, Inc.*, 781 F.Supp. 1225, 1228 (E.D. Mich. 1991) (citations omitted).  In other words, it is this Court's duty to interpret the agreement between the parties and determine whether they intended to arbitrate the grievances at issue.  *See AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986).

In *Prima Paint*, the Supreme Court held that "in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and

4

performance of the agreement to arbitrate," and not issues relating to the underlying merits of the case. 388 U.S. at 404.  The purpose of this narrow scope of review is to honor "the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." *Id. See also AT & T*, 475 U.S. at 649 ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.").

The Federal Arbitration Act embodies a clear federal policy requiring arbitration unless the agreement to arbitrate itself is revocable. *Perry v. Thomas*, 482 U.S. 483, 489 (1987). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constitution. Corp.*, 460 U.S. 1, 24 (1983).  As the Supreme Court has stated,

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Id*. at 24-25.  A motion to compel arbitration should be granted "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 (1960).

### ANALYSIS

The arbitration agreement ("Arbitration Agreement") at issue provides, in relevant part, as follows,

**ARBITRATION AGREEMENT**

5

**This Arbitration Agreement significantly affects your rights in any dispute with us.**

**Please read this Arbitration Agreement carefully before you sign it.**

- **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT.**
- **IF A DISPUTE IS ARBITRATED, YOU AND WE WILL EACH GIVE UP OUR RIGHT TO A TRIAL BY THE COURT OR BY A JURY.**

***

- **OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**
- **YOUR AND OUR RIGHTS TO APPEAL OR CHANGE AN ARBITRATION AWARD IN COURT ARE VERY LIMITED.**

In this Arbitration Agreement ("Agreement") "You" refers to the customer or customers who sign below.  "We," "us", "third party" and "Dealer" refer to the Dealer signing below, and include the Dealer's employees, agents, assigns and parent and affiliated companies.  "Parties" refers to you and us....  "Claims" shall have the broadest possible meaning, and shall include any and all disputes, claims or controversies, whether in law or in equity, between the Parties relating in any way to the Vehicle and arising out of or relating in any way to: (a)the Vehicle's condition, warranty, workmanship, servicing, maintenance or repair, (b) the application for and terms of and enforceability of the sale, lease, or financing of the Vehicle...,(c) the purchase or terms of any product or coverage... (d) any claims of breach of contract, misrepresentation, conversion, fraud, or unfair and deceptive trade practices, (e) any claim relating to the advertising or marketing of the Vehicle; or (f) any claim of a violation of any local, state or federal statute, regulation, ordinance, rule, etc.

At the request of either Party, any Claim shall be decided in binding arbitration before the American Arbitration Association... or the National Arbitration Forum... ("the Arbitration Organization").

You may select the Arbitration Organization....  The arbitration hearing shall be conducted in the federal district in which you reside or in which the Vehicle was purchased or leased.

The parties agree that once one of the parties has elected to arbitrate, binding arbitration is the exclusive method for resolving any and all Claims and that by entering into this Agreement the parties are waiving their right to a jury trial....

The arbitrators shall be attorneys or retired judges and shall be selected in accordance with the applicable rules.  The arbitration award shall be in writing, but without a

6

supporting opinion.  The arbitration hearing shall be conducted in the federal district in which you reside....

If a party fails to arbitrate as required under this Agreement, the party demanding arbitration shall, unless prohibited by applicable law, be entitled to recover its/their attorneys' fees and costs incurred in compelling the other party to arbitrate the claim.

***

**BY SIGNING BELOW, THE PARTIES ACKNOWLEDGE THAT THEY HAVE READ AND AGREE TO THE TERMS OF THIS ARBITRATION AGREEMENT.**

1.      Unconscionability

Plaintiffs argue that the Arbitration Agreement is not enforceable because it is unconscionable.  Defendants dispute this assertion.

"Unconscionability is generally recognized to include an absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party."  *Collins v. Click Camera & Video, Inc.*, 621 N.E.2d 1294, 1299 (Oh. Ct. App. 2d Dist. 1993).  In order to establish that an agreement to arbitrate is unenforceable due to unconscionability, plaintiffs must establish that the agreement is both procedurally and substantively unconscionable.

Procedural unconscionability exists where "individualized circumstances surrounding each of the parties to a contract [are such that] no voluntary meeting of the minds was possible." *Id*.  Factors to be analyzed include the "relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible."  *Cross v. Carnes*, 724 N.E.2d 828, 837 (Ohio Ct. App. 11th Dist. 1998).  On the other hand, substantive unconscionability arises as the

7

result of unfair and unreasonable contract terms.  *Id.*

In support of their argument that the Arbitration Agreement suffers from procedural unconscionability, plaintiffs point out that defendants did not inform plaintiffs of the purchase documents, including the Arbitration Agreement, until plaintiffs arrived in Florida.  Rather, upon plaintiffs' arrival, defendants presented the documents to Mayra Coughlin-Ewers in a stack.  The documents, including the Arbitration Agreement, were pre-printed form documents.  At no point did anyone explain the contents or terms of the Arbitration Agreement or advise her that she had time to review the documents.  Plaintiffs also point out that, although Raymond Ewers holds a law degree and is currently a judge, Mayra Coughlin-Ewers has no legal background and did not review the Arbitration Agreement with her husband prior to signing it.

Upon review, the Court finds that plaintiffs fail to establish procedural unconscionability. As an initial matter, the Court finds Mayra Coughlin-Ewers to be sufficiently capable of understanding the Arbitration Agreement.  As she admits, she is a school teacher and, thus, presumably possesses a college education.  Moreover, her husband is an attorney and a judge. Although not present in the "office," her husband was in the showroom at the time she signed the documents.  Thus, she had access to counsel if she had any concerns about the contents of the Arbitration Agreement.[2]

The Court also does not give much weight to the fact that the plaintiffs were not informed

_____

[2]    The Court does not believe that Mayra Coughlin-Ewers is suggesting that she so completely didn't understand the nature of the Arbitration Agreement that she could not even ascertain that it was something an attorney could help her understand.  To the extent she is making such a suggestion, it is rejected.  In light of the basic wording of the Arbitration Agreement, the Court finds that any such argument is not credible.

8

of the meaning of the Arbitration Agreement or expressly informed they had time to review its contents.  There is no indication that Mayra Coughlin-Ewers asked any questions of defendants or sought time to review the materials.  Again, her husband was on the premises, but she chose not to review the materials with him.  Moreover, "the law does not require that each aspect of a contract be explained orally to a party prior to signing."  This is especially so where "the provisions...were not in fine print [and] were neither hidden nor out of the ordinary...."  *ABM Farms, Inc. v. Woods*, 692 N.E.2d 574, 578 (Ohio 1998).

The Court is, however, somewhat disturbed that plaintiffs were informed of the Arbitration Agreement only after agreeing to purchase the van, wiring the money and arriving in Florida.  This is undercut, however, by the fact that the Arbitration Agreement was a contract separate and distinct from the purchase of the van.  An enforceable contract existed for the purchase of the van at the time plaintiffs hit the "buy it now" button on EBay.  Thus, the Arbitration Agreement was not part and parcel to the purchase of the van.  Plaintiffs note, however, that they felt that defendants would not turn over the van unless they signed the Arbitration Agreement and that it was their "understanding" that the Arbitration Agreement was presented in a "take it or leave it" fashion.  In essence, it appears that plaintiffs are claiming that had they not agreed to enter into the Arbitration Agreement, defendants would not have performed their separate obligation to provide the van.  Plaintiffs, however, fail to provide any evidence supporting their feeling.  For example, there is no indication that defendants ever informed plaintiffs, either verbally or through action, that they would not receive the van unless

9

they signed the Arbitration Agreement.[3]  The Court finds that plaintiffs fail to establish

procedural unconscionability.

Nor do plaintiffs establish substantive unconscionability.  Plaintiffs argue that the

Arbitration Agreement fails to divulge any information regarding the arbitration process or rules

and, as such, plaintiffs were denied access to "some very important information."  Plaintiffs also

claim that the provisions printed in capital letters, which describe the rights the parties are

relinquishing, are vague and ambiguous.  This Court disagrees.  As an initial matter, plaintiffs

fail to identify what additional information should have been provided in the Arbitration

Agreement.  Moreover, the Court has reviewed the provisions and concludes that they are neither

unreasonable nor unfair.  The provisions fairly put the signatory on notice that substantial rights

will be waived by entering into the Agreement.  The Court does not find the provisions to be

vague or ambiguous in any way.[4]

Plaintiffs also claim that certain provisions are "fraudulent."  For example, plaintiffs

---

[3]     The Court does not find the Arbitration Agreement to be a contract
of adhesion, even though it is preprinted.   Again, the Arbitration
Agreement is an a contract separate and apart from the agreement
to purchase the van.  There is nothing adhesive specific to the
Arbitration Agreement.

[4]     The only provision plaintiffs specifically discuss provides,
"EITHER YOU OR WE MAY CHOOSE TO HAVE ANY
DISPUTE BETWEEN US DECIDED BY ARBITRATION AND
NOT IN COURT."  Later, the Arbitration Agreement explains that
"the parties agree that once one of the parties has elected to
arbitrate, binding arbitration is the exclusive method for resolving
any and all Claims."  The Court does not find these provisions
ambiguous.  Rather, they simply provide that in the event one of
the parties chooses to arbitrate, the other party is also bound.  In
the event neither party elects arbitration, the matter may proceed
elsewhere.

10

claim that page two of the Arbitration Agreement provides that the arbitration must be conducted in the federal district in which plaintiffs reside.  In addition, the agreement provides that plaintiffs have the right to select which of two arbitration organizations will hear the matter. According to plaintiffs, defendants selected the arbitration organization and instituted proceedings in Florida, even though plaintiffs reside in Ohio.[5]  The Court finds that the provisions, in and of themselves, are not "fraudulent."  Plaintiffs' true complaint lies in defendants' attempt to circumvent these provisions.  This issue will be addressed below.

Finally, plaintiffs point out that the agreement simply references the Federal Arbitration Act, is set forth on a pre-printed form and fails to disclose costs related to arbitration.  Plaintiffs, however, fail to present any explanation or argument as to why these factors render the Arbitration Agreement unfair and/or unreasonable.  Accordingly, these arguments are rejected.

In all, the Court finds that plaintiffs fail to establish that the terms of the Arbitration Agreement are sufficiently unfair or unreasonable so as to give rise to a claim of substantive unconscionability.

2.      Fraudulent inducement

Plaintiffs also argue that the Arbitration Agreement is unenforceable because it was fraudulently induced.  In support of their position, plaintiffs point out that defendants expressly represented that the arbitration would proceed in the federal district in which they reside.  Yet,

---

[5]      Plaintiffs argue that to the extent the Court interprets the Arbitration Agreement to require plaintiffs to proceed with arbitration in Florida, the agreement is substantively unconscionable because plaintiffs are residents of Ohio and requiring them to absorb the costs of traveling such a distance is unreasonable.  The Court, however, does not interpret the Arbitration Agreement to require that plaintiffs proceed in Florida.

defendants improperly elected to have the arbitration proceeding take place in Florida. Similarly, defendants wrongly chose the arbitration organization themselves, even though the Arbitration Agreement gives plaintiffs that right.

"In order to prove fraud in the inducement, a plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation to her detriment." *ABM Farms, Inc.*, 629 N.E.2d at 579.  Upon review, the Court rejects plaintiffs' argument that defendants fraudulently induced them to sign the Arbitration Agreement.  Although defendants' actions may have been contrary to the terms of the contract, there is no "misrepresentation" amounting to anything other than a possible breach of the agreement's terms.[6]

Plaintiffs also argue that fraudulent inducement exists because the Arbitration Agreement was executed based on the assumption that the van contained leather upholstery.  It is well settled, however, in order to avoid arbitration, a party must "demonstrate that the arbitration provision itself...not merely the contract in general, was fraudulently induced." *Id*. at 577-78. Plaintiffs' claim that defendants misrepresented the material used in the upholstery does not relate to whether the Arbitration Agreement itself was fraudulently induced.  Rather, it relates to the  contract to purchase the vehicle.  As such, plaintiffs fail to establish grounds necessary to support their claim of fraudulent inducement vis à vis the Arbitration Agreement.

    3.        Rescission

---

[6]       Although on occasion a party may demonstrate fraudulent inducement by demonstrating that the contracting party had a present intention not to perform, plaintiffs do not make this argument.  Nor do plaintiffs present any evidence to support such a theory.

Plaintiffs argue that defendants materially breached the Arbitration Agreement by selecting the arbitration association and electing to venue the hearing in Florida.  According to plaintiffs, these breaches are sufficiently material to warrant the equitable remedy of rescission. It is undisputed, however, that no arbitration has proceeded and no hearing has been held.  This Court finds that, on the facts of this case, rescission is not warranted.  Rather, the Court will enforce the terms of the parties' Arbitration Agreement.[7]  Accordingly, plaintiffs are permitted to chose the either the American Arbitration Association or the National Arbitration Forum to hear the dispute.  Moreover, the hearing must occur in the Northern District of Ohio.

4.      Fees

Defendants move the Court to impose attorneys' fees incurred due to plaintiffs' failure to arbitrate the claims at issue. The Agreement contains a provision permitting a party to recover fees if the opposing party refuses to arbitrate.  According to defendants, fee shirting provisions are commonly upheld in Ohio.  Conversely, plaintiffs argue that because plaintiffs are consumers with unequal bargaining power, Ohio public policy prevents enforcement of the provision.

Upon review, the Court finds that this dispute is not properly raised in this venue.

---

[7]     Defendants argue that the arbitration must proceed in Florida because the Agreement provides that the hearing may take place in either the federal district in which plaintiffs reside or the federal district where the vehicle was purchased.  This Court disagrees. As an initial matter, the Court is not convinced that the purchase of the vehicle actually took place in Florida, as opposed to Ohio. Moreover, the Agreement later provides that the arbitration hearing will be conducted in the federal district in which the consumer resides.  As this provision is more consumer friendly, the Court will enforce the plaintiffs' right to require that the arbitration proceed in Ohio.  The same holds true for the provision permitting plaintiffs to select the arbitration organization.

13

Rather, the fee issue arises as a direct result of the Agreement and, as such, the issue of fees and costs must be decided in arbitration.[8]

    5. Dismissal or stay

    Defendants request that, to the extent this Court enforces the Arbitration Agreement, the case be dismissed.   In the alternative, defendants request that this case be stayed.

    This Court has determined that all of the claims remaining in this case are subject to the arbitration clause in the Agreement.[9]  The Sixth Circuit has held that where there is "nothing left for the district court to do but execute judgment," dismissal is appropriate.  *Arnold v. Arnold Corp.–Printed Communications for Business*, 920 F.2d 1269 (6th Cir. 1990);  *See also ATAC Corp. v. Arthur Treacher's, Inc.*, 280 F.3d 1091 (6th Cir. 2002) (implicitly recognizing propriety of dismissing action in deference to arbitration).   This Court finds that dismissal of plaintiffs' claims in deference to arbitration is appropriate.

**<u>CONCLUSION</u>**

    For the foregoing reasons, Defendants Genuine Motor Cars, Inc. Joseph G. Kase, and Bryan Rogers' [sic] Motion to Dismiss or Stay Case Pending Arbitration, and for an Award of Attorneys' Fees and Costs IS GRANTED in PART.  The issue of fees and costs must be decided in arbitration.  Consistent with the Arbitration Agreement, plaintiffs are permitted to choose the

---

[8]    The Court notes that the Agreement permits plaintiffs to choose the arbitration organization and also directs that any arbitration proceeding be held in Ohio.  Defendants did not adhere to either provision.  Thus, it does not appear to the Court that plaintiffs' decision to challenge the initial arbitration was unreasonable.

[9]    The parties agree that, to the extent this Court enforces the Arbitration Agreement, all claims between all parties are subject to arbitration.

arbitration organization to hear the dispute and any such hearing must be held in this District.

        IT IS SO ORDERED.


                      /s/ Patricia A. Gaughan
                      PATRICIA A. GAUGHAN
                      United States District Judge


Dated: 3/18/08

15